319-0174 Andrew Noll v. Reed, Kemp, and Betts v. Rosler Athlete by Peter Genetichen May it please the court. Good afternoon, I am Patrick O'Shaughnessy and I represent the plaintiff Andrew Noll in this case. This is the case about the shooting at an unsupervised high school party which was held in a rural location in Peoria County by a 17-year-old, Benton Rosler. At that party, my client, Andrew Noll, was shot in the leg as well as two other people. It is here before the appellate court today on the question of whether it is appropriate to convert respondents in discovery, Mr. and Mrs. Rosler, the parents of the 17-year-old, to defendants in the case. Now the Roslers are the parents, they own this rural property. The original lawsuit was brought against the shooter only, a person named Miller. Later in time, both Mr. and Mrs. Rosler and their son were added as respondents in discovery. The plaintiff then attempted to convert the respondents in discovery to defendants in this case. Following a hearing, the trial judge denied that motion and this appeal follows. The standard of review for the denial of a conversion of the respondent in discovery for this case should be de novo. That follows this court's determination in 2003 in the case of Jackson Baker v. Minnesota. It is de novo in this case because the trial court considered only documentary evidence and no live witnesses testified at the hearing to convert the respondents in discovery. Now with regard to actually the conversion of a respondent in discovery, the appropriate test is probable cause. Whether the hearing discloses the existence of probable cause for such action. That's been defined fairly consistently as whether one can entertain an honest and strong suspicion that the actions of the respondent in discovery were approximate cause of the plaintiff's injury. This is a relatively low threshold. It is not the same, not even close to a summary judgment standard. One doesn't have to prove a high degree of likelihood of success on the merits and this is to be literally construed. In denying the motion to convert, the trial court got this question incorrect. To clarify what's actually in front of the court today. At the trial court, when the plaintiff filed the motion to convert, there was an amended complaint with four theories of liability against the Rosslers. On appeal, two of those theories have been abandoned. There's only two that are being pursued in seeking to reverse this decision. One is the drug or alcohol impaired minor responsibility act, a relatively new statute. And second is liability under 316 of the restatement of torts, which deals with parental supervision. So the first issue is the drug or alcohol impaired minor responsibility act. This has in its provisions that a person who's injured by an impaired person under 18 has a right of action against any person who willfully permitted consumption of alcohol or illegal drugs on non-residential premises, owned or controlled by that person, which caused or contributed to the impairment of the minor. So as this is pled, the minor is Benton Rossler, the 17-year-old son of the property owners. He is the one that is pled as being the impaired minor, not the shooter. The shooter was not under 18. The parents is pled willfully permitted consumption of alcohol and drugs on this rural premises they owned because they had notice. And two times in the one year prior to the incident, the minor Rossler was caught by his father with a gathering of friends with drugs and alcohol. And he shut it down, shipped everyone off the property. Now, at this occasion, the same son, 17 years old, has permission to hold this end of the year party out on the rural property. He gets further permission to extend the time of the property, but the party remained unsupervised. The parents were not there. It was not checked on. It was not checked on as it extended into the night after it passed the first time limit, after it passed the second time limit. This equates to willfully permitting consumption because this is a conscious disregard on the part of the parents of what was going on on the property when they had very clear notice that their son had had gatherings like this with alcohol and drugs in the past. Now, the final thing pled is that the impairment of the 17-year-old caused the party to get out of control because he refused to seek assistance. Now, he testifies that he invited only 10 or 15 of his closest friends, but the numbers from the witnesses indicate this was 30, maybe 50, one even higher, estimate of who eventually got there. People invited other people, and this got out of his control. He did not seek help from his parents. He did not seek help from the police. When the argument over the drug money began from the people who showed up at the party, he told them to leave the cabin. He didn't tell them to leave the property. The whole time, the gate to the road remained open. Now, the mistake I believe the trial court made in analyzing this was lack of comprehension of the theory pled because the trial court says this one's pretty simple. That statute applies to a person under 18, and obviously the person who pulled the trigger was over 18, so that wouldn't even apply. And that's not what the argument was. That's not what was pled. The pleading and the evidence submitted was that the intoxicated minor, the 17-year-old host of the party, the party got out of his control. His parents had constructive knowledge and conscious disregard for the happenings that occurred at that property. This impairment caused the party to get out of control, or caused him not to seek help, or exactly what is the link there? Because my understanding is that when this last group shows up, he tells them to kick them out and tells them to leave. He tells them to get out of the cabin. It's both. The impairment led to the party getting out of control. He couldn't get the guests to leave, and he wouldn't seek help to get the guests to leave because he was likely intoxicated. So he's not going to call his dad. He's not going to call the police. He can't stop them. And he has a comment on that too. This is C-72 from the record. As I told them, Mike, originally it was just a hangout until 11, and everyone had to leave. And they kind of took it out of hand, I guess, and I really didn't have any control at that point. The party snowballed beyond his control, and his impairment is what allowed that to happen and allowed it to continue. Is this a kind of like a fact pattern that this statute envisioned? I don't think it was directly what was envisioned. No, I think the statute had as the most narrow application a minor that gets intoxicated and the party injures himself. That's envisioned. Or a minor who's intoxicated and then injures someone else directly. But I don't think it can be read that narrowly that that's all it can cover. Yes, it's a normal thing for the statute. Yes. You hurt yourself, you hurt somebody else. Right. And you're intoxicated. Right. And you're a minor. Yes. That's the most narrow reading of it. But I don't believe it can be limited to only that. I think that's clearly what we all had in mind. You've got a situation where you have a minor who's intoxicated, and you've got somebody else who injures somebody. Yes, at his party. And the allegation we have in this case is that his intoxication is what, first of all, led to the party going that late, led to it spiraling because he couldn't stop it. He couldn't call for help because he wasn't going to admit to his parents or the police that he was an underage person drinking and having drugs. If that was one of the purposes of this legislation, it could have been in the law of a minor, couldn't it? I don't know what you would say to expand it in plain language beyond that. A minor injures someone directly or indirectly. But I think the important part is the statute lists damages as those proximately caused. And the proximate cause definition provides us that expansion. It doesn't have to be the nearest cause or the most recent. It's sufficient if it combines with another cause. Let's take a step backwards. So you've got to – certainly if the minor injures the minor's self or the minor injures somebody else and is intoxicated, that's covered, right? If they directly injure you. So now in this circumstance, you've got a minor who's intoxicated and the minor doesn't kick certain people out of the party. Is that what – One thing, he doesn't kick them out. He's lost control of the party. He doesn't seek assistance from his parents or the authorities. He tells them to take the argument outside the cabin and stay on the property, that type of thing. But he doesn't directly injure somebody or himself? Correct. He does not directly injure someone himself. But I don't think the statute requires that because it is what's proximately caused by his actions. And so would you say he indirectly caused it was somebody else shooting somebody else? Yes. His intoxication was an indirect cause of that. But an indirect cause is still sufficient under the statute because – His intoxication caused someone else to shoot somebody. Yes. That would be what is being advanced here. How do you not just deem this to be social host liability then? How do I deem it not to be? Right. Okay. How do you get around that? Because social host liability, the best definition I've seen in this came from Justice Schmitt's concurring opinion in a decision of this court, that social host liability is a social host holds a party, a social invitee becomes intoxicated, and someone gets injured. We don't have a social invitee in this case. There is no other person whose intoxication at the party was the direct cause of the injury. So it's not a social host. And that leads us to the second thing being brought up, the liability alleged under Section 316 of the Restatement. And that is one of the ways it shows how this is distinguished from social host. The rationale behind the prohibition of social host liability as explained by the Supreme Court is that the drinking of an intoxicant, not the furnishing of it, is the proximate cause of intoxication and the injury. Therefore, they're not going to impose civil liability on the host for the actions of the guests. And that's where you get this definition from this court, the concurring opinion. Social host has a party, guest consumes alcohol, someone gets hurt. Here the civil action is focused on the actions of the Rossler's son, not on the actions of the social guest. The theory is not the furnishing of alcohol is the basis of the probability. The theory is that the unsupervised teenage party is what can get out of control and provide the probability of an injury. So one of the best cases explaining this through Section 316 is Duncan v. Zonka. It's a good illustration. Basically put, three-year-old at a bank, son of a customer, pushes the police silent alarm button. The police officer comes. They tell the mom, hey, your son pushed this button. Six days later, they're back in the bank and the three-year-old does it again. This time, the police officer is injured in an auto accident on the way to the bank. The child had done the same thing six days earlier. The parent was made aware. Complaint alleging liability under Section 316 was brought, and the court accepted that theory because it fit very well within the fact pattern. So here, the son has a party with alcohol and drugs twice. No one is hurt, but the parent finds out. It happens again, and this time someone is hurt, just like the police officer with the bank. The child presses the button once. No one is hurt. The parent knows. The child presses the button a second time, and someone is hurt in response. Not hurt directly by the child, but by a different act, and that's what happened here. One of the phrases they used on this is the likelihood of injury to the plaintiff. In the Duncan case, the police officer was significant and not so freakish as to be an unforeseeable consequence. Thank you. There's no question the party got out of Ben's control, and that concept of a party spiraling out of control, a teenager hosting an unsupervised party with drugs and alcohol, is not freakish either, which leads us to the final issue of proximate causation. I think it's clearly foreseeable that a minor hosting a party like this in a rural location, without parental supervision, with drugs and alcohol, can get out of control. The very existence of social media helps us celebrate that today with the ability of people to communicate with each other. And looking at social host liability, now, I'm still arguing this is not social host liability, but why would these things get out of control? The very nature of why there's a social host liability prohibition tells us it would open a Pandora's box because of how often these parties can get out of control. Here's another good example. November 2019, two months ago, Associated Press reports that Airbnb, the Internet company, has now banned party houses. It's an attempt to step up efforts to combat unauthorized parties. It was done in specific reaction to a shooting of five people at a party house on Halloween at an Airbnb rental in San Francisco. The article by the Associated Press also indicates that 30 separate shootings had been documented by media as a result of Airbnb party rentals in the six months prior. And I don't mean to be flippant or trite about this, but this very concept, this teenage party when the parents aren't there that gets out of control, is actually a pop cultural reference. You can just think about the movies. I just did a search and dozens, 16 candles, weird signs, mean girls, 10 things I hate about you, American Pie, House Party 1, 2, and 3, super bad, clueless, it goes on. It is a very common concept. I think it is very easily foreseeable and predictable. It is not a freakish occurrence. Thank you. Thank you, Your Honor. May it please the Court, Counsel. This case really opposes one fairly simple and straightforward question. I didn't mean to shock you. But it poses really the single question of when one person can be held liable for a crime committed by someone else. The Rosslers were not conspirators or joint venturers with Mr. Covington or Ryan Miller who were involved in collecting the drug debt. They didn't invite him. They didn't even have reason to know that they would be at this party. And it's a stretch to call it a party. Counsel referred to a couple of prior events they had at the lake, which occurred approximately a year prior and been stopped by Mr. Rossler and without evidently any intervening incident. And more importantly, no history of any violence at any of these prior events, no history of any police being called to prior events, nothing like that. It was parties that discovered and shut him down. And that was the end of it. Plaintiff's claim, like the movies he cited, is fictitious. There is generally no duty on the part of a property owner to protect entrance to their property from criminal acts, and the few exceptions are not applicable in this case. The most on-point case is the Elizondo case. And that liability in that case failed, not because the plaintiffs were not clever enough to make the arguments that counsel made here, but because there is no liability, because the social host is not liable for crimes committed. And I would disagree with his position that this does not involve social host liability. That is clearly what is involved here, referring to a party that got out of hand, that people who were uninvited came, and that this accident happened. Clearly, this is a type of social host liability. The difference between this and what he has cited is that the liability, the causation, is more remote in this case than in the ones that he has typically cited. There are no cases cited by either of the sides finding parents liable for failure to control another person under similar circumstances. And what they're asking to impose liability for is not just failure to control Benton Rossler. They're asking us to impose liability for the parents' failure to control Benton to control Ryan Miller. And that's just simply a step too far and not supported by the cases cited. The first theory that they're relying upon is Section 316 of the Restatement. And the Duncan v. Brzonka case, which involved a police officer that he referred to. In that case, there were two incidents. The first one, six days prior to the second, in which the little boy pushes the alarm button to summon the police. And the second one, six days later, when he does it again. In both instances, the mother was present on the property and had the opportunity to supervise the child but failed to do so. And that's a significant distinction because in all of the cases that are in Section 316, the ones that discuss it, where the parents are not present, do not have that immediate presence and opportunity to intervene, they are not held liable. That includes those discussed particularly in Barth, Bishop, and Cooper cases. Barth involved a police officer who was shot by their son during a robbery. And the argument was, well, you were aware that he was shooting kids with a propensity to do that. The court said, no, that's not sufficient to establish a liability. Bishop involved a daughter who took a family car for a joyride. And when she returned, she hit one of her friends in the driveway and actually drove her through a garage or a shed or something and injured her. And the argument was that, well, you left the keys. You knew she had driven the car before and driven in the driveway. The court said that was not sufficient to impose liability. Cooper v. Meyer involved a little boy, a kid who attacked a neighbor who came over to complain about his conduct while the babysitter was there. The parents weren't home. And the court said, can't be held liable even if you knew the kid had a propensity for violence. The parents weren't there and didn't have the opportunity to control him. The other cases, besides the lot case, involved a kid who was drunk driving and caused an accident. Had previously been in an accident in which he hit a deputy's car. It wasn't sufficient to impose liability on the parents. Pesek v. DiCepolo involved a young man who skipped school with a girl and raped her. And they argued that the parents had noticed that he was delinquent, that he was skipping school, et cetera, and it was not sufficient to impose liability on him. And all of those cases involved actions by the child. The injury directly caused by the child still did not impose liability. We are one more step removed from that in this case. The Deering case in this court held that the party goers, the person who held the party could not be liable for a criminal attack by party goers. And the Elizondo case that I already mentioned involved, and that's the case that is the most factually similar to the present one. And the plaintiff argues with respect to the Elizondo case that the parents didn't have notice of prior parties that this girl threw. What happened was they lived upstairs and they had an empty apartment downstairs and let her throw a party downstairs. And yet they didn't have notice of a prior party. They had notice of that party. And they gave her permission to have that party. And she charged an admission fee, $3, for the buddy who came in. And they said, we're not going to allow gang members in. Gang members came in and one of them murdered another one. And the court said, you're not liable for that criminal act. And that really is what we have here is trying to impose liability upon the Roslers for someone else's criminal act. And that's clearly not appropriate. The second theory that they relied upon is the Drug, Alcohol, Impaired Minor Responsibility Act. And the court properly evaluated this in the trial court, focusing on who was the shooter. Because that was the person who caused the injury. And that person was not under 18, so they were not subject to the statute. Plaintiff attempts to focus this argument on Benton Rosler, argue that, well, Benton was the impaired minor. But Benton didn't shoot Mr. Knoll and didn't cause him to be shot. And there's nothing about Benton's impairment that caused him to be shot. To have liability under the Drug, Alcohol, Impaired Minor Act, the injury has to relate to the minor's impairment. In this case, it doesn't. There is no connection. And plaintiff's counsel has not explained what that connection is. He's just said, well, the party got out of hand and things happened. There needs to be more than that to show proximate cause. And I think Your Honor, Justice O'Brien and Justice Carter were appropriately focusing on that, that the connection here is simply too remote. That's a proximate cause question under First Springfield Bank and Trust v. Goldman. It asks whether the injury is of a type that a reasonable person would see as a likely result of their conduct. And I don't think allowing your son to have a few friends over to go swimming is not something that you would expect to result in an uninvited drug dealer showing up to collect a drug debt and someone getting shot. And it's even more remote than that. If we think about how this went down, they're having this party. The kids are in the cabin. These guys come to collect the drug debt. And they come down to the cabin. And Benton Rossler, another kid, confront them, kick them out of the cabin. They go outside. They finish the argument. And they're leaving. They walk up the hill back toward the road. And he gets to the top of this hill and he turns around and fires some random shots into the crowd. Nothing that Benton Rossler did was a proximate cause of that shooting. Moreover, there's nothing that he could have done or should have done to prevent that. Plaintiff's counsel has not explained what Benton was supposed to do. They suggested, well, maybe he could have called the police. But the deputy who eventually responded to that said it took them a half an hour to get there. It took them 30 minutes. It wasn't going to make any difference. There's nothing that Benton could have done differently. I mean, he confronted an armed drug dealer who was at the property and at least got him out of the cabin and de-escalated that and got them moving away from the property. I don't think there's anything else we could have asked him to do. Even if there was a duty, there's no breach. Even if there's a breach, there's no proximate cause. So unless there are questions, Your Honor, that's all I have. Thank you. Thank you, Mr. Chapman. Mr. Patterson. I have just a few brief comments. I think most of this is well-argued in the briefs as well. On the section of the restatement, counsel has an argument that the parents need to have an opportunity to control the child and fail to do so in order to fit within that theory of liability. And I disagree with them in this case. That is the standard. But that's exactly what we do have here. The parents had an opportunity to control their child. He asked permission to host this party, and they gave it to him. He asked for time to continue the party, and they gave it to him, up to the curfew. Then another hour goes by, and there's no investigation on the part of the parents. They had the opportunity to control this child by either saying, no, you cannot have friends out at the property again because we have found you there with drugs and alcohol in the past, or they could go to the party themselves. They failed to take any actions in light of this past history to control their child, and that's what that's about. The Elizondo case, I don't believe, is the most similar. It's the most similar only that it involves a shooting. But other than that, there's nothing else to it because that happened at the house. The parents were active participants in the party. I think the dad was on the front porch drinking with the guests when the fight broke out. So it has nothing to do with controlling the actions of the child, and that's why I think it's too dissimilar to have any real usefulness here. And finally, counsel made the comment that it's clearly a social host liability issue, and that's where I again just disagree because that's not a generic definition. That is a very specific concept. A social host liability is not allowed because it's not authorized by the legislature, and it involves a situation where a person hosts a party, a guest becomes intoxicated, and causes an injury. We do not have a situation here where an intoxicated guest is involved. We are focusing entirely on the actions of Benton Rossler, and that's the point behind the theories we're presenting. In all events, I believe this does present appropriate probable cause. This may have trouble with summary judgment. We all know this is a tough one, but it deserves to get there. That's the posture we're at here, and that's why I'd like this to go like this. Thank you. Thank you, Mr. Richardson. Thank you both for your argument today. We take this matter under advisement. We'll get back to you with a written disposition within a short time. We'll now take a short recess. Be careful.